KATE L. WILMOT, ADMINISTRATRIX, *vs.* MICHAEL MC-
PADDEN, JR., ET ALS. ·

Third Judicial District, Bridgeport, October Term, 1906.
BALDWIN, HAMERSLEY, HALL, PRENTICE and THAYER, Js.

While demolishing and removing an old house which he had bought
for that purpose, the vendee and his agents are not the servants
of the vendor, nor can the latter be held liable for their careless
conduct under the doctrine of *respondeat superior.*

If an independent contractor who is employed to do a certain job is
in fact a skillful and experienced man for the undertaking, it is
of no consequence whether his employer did or did not exercise
due care in his selection.

The essence of actionable negligence is the infringement of another's
legal right.

A landowner whose premises are kept in a reasonably safe condition,
is under no special obligation to enclose or otherwise guard them
merely to prevent young children from trespassing upon them;
and therefore his omission to do so will not render him negligent
nor liable in damages for a personal injury to a child which was
the direct result of the child's own thoughtless act while tres-
passing with his playmates upon such premises.

The so-called "attractive nuisance" doctrine has never been sanc-
tioned by this court as law in this State.

Damages recoverable for negligence in causing death are to be awarded
upon the same grounds, and to be measured by the same rule,
as if the action had been brought by the decedent in his own life-
time.

The fear of a witness that a chimney might fall upon him is not ad-
missible as evidence of its actual condition; but the reception of
his statement to that effect is not sufficiently harmful to be re-
garded as a ground for a new trial.

It is not necessarily error for a trial court to refuse to enforce formal
rules for the questioning of witnesses.

Argued October 25th—decided December 18th, 1906.

ACTION to recover damages for negligently causing the
death of the plaintiff's intestate, brought to the Superior
Court in Fairfield County and tried to the jury before
*Roraback, J.;* verdict and judgment for the plaintiff for
$750, and appeal by the defendants. *Error and judgment
set aside.*

The judgment appealed from was rendered upon a re-trial of the cause. See 78 Conn. 276. The defendants Patrick Heery and Martin Whalen made a joint defense, and in their answer denied material allegations in the complaint; moreover they alleged that the plaintiff's intestate was a trespasser on their premises, and that if said premises were in a dangerous condition they were rendered so by the ,acts of the plaintiff's intestate or other tres-passers, and that such acts were the occasion of the injury to him.

The defendant Michael McPadden made a separate de-fense through separate counsel, and prior to the second trial filed a substituted answer; this answer contains a denial of the material allegations of the complaint, and by way of a second defense, in the nature of a plea in bar, al-leges the following facts: 1. On May 3d, 1903, McPadden was the owner of the lot of land described in the complaint. 2. On April 28th, 1903, McPadden sold to the defendant Heery, for a valuable consideration, a two-story frame building standing upon said premises, and surrendered to him the possession and control thereof. 3. Said Heery was a suitable person to whom to sell said building, and he agreed to remove the same in a safe manner and within a reasonable time; and on the day following the purchase he began to demolish the building and remove it from Mc-Padden's lot. 4. Said building was in a safe condition, capable of being taken down and removed without danger to any person, and in its character and situation would not be a source of danger in the process of such demolition and removal. 5. McPadden did not reserve or exercise any control over said work nor in the selection of the servants and agents of said Heery by whom said work was in fact performed. 6. The acts and omissions complained of were not rendered necessary in the proper demolition and re-moval of said building, but any dangerous conditions ex-isting on said 3d day of May, 1903, and caused by the state of said building, or parts thereof, and by its alleged un-guarded condition, were created solely by the mode of per-

forming said work of demolition and removal in which the defendant McPadden had no part.

The court sustained a demurrer to this second defense, "for the reason that it does not appear from the pleading questioned that the defendant took necessary and reasonable precaution in selecting the contractor." McPadden thereupon amended his second defense by adding the following: "7. The defendants, Heery and Whalen, were masons and builders by trade and competent and experienced in the kind of work involved in the performance of said contract, which required peculiar knowledge and experience, and this defendant used due care in selecting them to perform the same."

Upon the trial the court treated McPadden's second defense as equivalent to the defense of "independent contractor." Upon McPadden's request to charge, and upon the charge of the court in respect to the legal effect of proving the facts alleged in McPadden's second defense, questions similar to those raised by the demurrer were raised and determined in the same way. In his separate appeal McPadden assigns as error these rulings of the court.

The negligence charged in the complaint, and denied by all of the defendants, is stated as follows: "On said 3d day of May, 1903, said premises were uninclosed and the building was unguarded by any obstruction, and was of a situation and character calculated to attract children thereupon, and was carelessly and negligently maintained by the defendants in a condition likely to cause injuries to children who might go in and upon and around said building. The defendants did not maintain a watchman about or upon said premises to give notice of or to guard against any danger to persons going in or near or upon said building, or give any notice of the dangerous condition of said building."

*John C. Chamberlain,* for the appellants Heery and Whalen (defendants).

*Henry E. Shannon*, for the appellant McPadden (defendant).

*Carl Foster*, for the appellee (plaintiff).

HAMERSLEY, J. This case was before us at the October term, 1905, when the judgment rendered upon a former trial was set aside. See 78 Conn. 276, 61 Atl. 1069. This appeal is taken from the judgment rendered upon a retrial of the cause.

The trial court erred in sustaining the plaintiff's demurrer to the second defense of the substituted answer of the defendant McPadden. Upon the sale of a house standing upon the vendor's land, to a suitable person for the purpose and upon the conditions stated in the second defense, neither the vendee nor his agents, while engaged in moving the property sold, are the servants of the vendor, for whose careless conduct the vendor can be held liable under the doctrine of *respondeat superior*.

The court also erred in substantially charging the jury that if they should find from the evidence that the defendants Heery and Whalen, in the removal of the house, were acting as contractors in a business independent from McPadden, and that all the facts alleged in McPadden's second defense had been proved, and that Heery, to whom the building was sold, was a competent and experienced person to properly and safely perform the work involved in the removal of the building, it would be necessary, in order to relieve McPadden from liability for the negligence of Heery and Whalen, that they should also find that McPadden used due and proper care in selecting a competent person to perform this work. It is possible that the court, in detailing the conditions that would relieve McPadden from liability on the theory of his having employed Heery as an independent contractor, did not intend to make the finding of every condition detailed essential to such relief; but a careful reading of the whole charge, in connection with the denial of McPadden's request to charge, compels

the conviction that the jury must have so understood the instructions of the court. If all the other facts alleged in McPadden's second defense were found to be true, it would be manifestly immaterial to the sufficiency of that defense whether the jury were satisfied or not satisfied that Mc-Padden used due and proper care in selecting Heery, whom they find to have been in fact a competent person to perform the work he undertook to perform as an independent contractor. The court should have so charged the jury. *Lawrence* v. *Shipman*, 39 Conn. 586, 590; *Corbin* v. *American Mills*, 27 id. 274, 280; *Norwalk Gas Light Co.* v. *Norwalk*, 63 id. 495, 524, 525, 529, 28 Atl. 32; *Wilmot* v. *McPadden*, 78 Conn. 276, 61 Atl. 1069. For this reason there is error in McPadden's appeal and the judgment against him must be set aside.

The other errors assigned in McPadden's appeal are substantially the same as those assigned in the appeal of Heery and Whalen, and they will be considered together. The following facts appear from the record to have been practically conceded: On and some time prior to May 3d, 1903, the defendant McPadden owned a piece of land in Bridgeport fronting on Pembroke Street, which piece of land was uninclosed. On part of this land there stood a building in which Alva F. Wilmot (the plaintiff's intestate) lived with his parents; there was, also, on another part of the land, a dwelling-house of wood on a stone foundation, with brick chimneys, which house was old and in a dilapidated condition. For a few days prior to May 3d the defendants Heery and Whalen, acting under authority derived from McPadden, were engaged in taking down and removing the said dwelling-house. At the close of work on Saturday, May 2d, all of the house had been removed except the foundation, the first floor, and two brick chimneys. On the afternoon of the following day, Sunday, Alva Wilmot, then about seven and a half years of age, with other children of about his own age, was upon the first floor of said house, when one of said chimneys collapsed and fell, and in falling injured Alva so that he shortly afterward died. The chil-

dren were on the first floor of the house without warrant
or permission of the defendants.    When the workmen left
the house on Saturday night, and on the Sunday following,
it was uninclosed and unguarded by any obstruction, and
no watchman was maintained or other notice given of the
condition of the building.    The plaintiff in her complaint
alleges that the injuries and death of her intestate were
caused solely by the negligence of the defendants, and this
negligence is described as follows : In maintaining, on said
May 3d, said land uninclosed, and the remnants of said
dwelling-house (being of a character to attract children
thereupon and of a character likely to cause injuries to
children who might go upon it) unguarded, and in not main-
taining a watchman or otherwise giving notice of the dan-
gerous character of said building.

Upon the trial there were two contested issues of fact.
First, was the chimney which fell down left by the defend-
ants on Saturday night in an unsafe condition with its sup-
ports removed, so that it was in danger of toppling over,
and without being properly shored or propped up?    The
plaintiff claimed to have proved the affirmative of this is-
sue ; the court's statement of the law applicable to the fact
of such unsafe condition (if the jury should find it proved),
in connection with the other facts, is not specially assigned
as error.    Second, were the bricks supporting the chimney,
which the defendants had left in a safe condition on Satur-
day night, removed on Sunday afternoon by the plaintiff's
intestate and another child a little older digging out the
supporting bricks with sticks they had obtained for that
purpose, so that the chimney fell down in consequence of
its being thus undermined?    The defendants offered evi-
dence to prove and claimed to have proved the affirmative
of this issue.    They asked and were entitled to a statement
by the court of the law defining their liability upon the
state of facts as thus claimed by them to have been proved.
The court having instructed the jury that the denial of the
plaintiff's allegation—that on May 3d the uninclosed and
unguarded building was of a character to attract children,

and was in a condition likely to cause injury to children who might go into it—raised one of the controlling issues of the case ; and having stated to the jury that the plaintiff claimed, as of the substance of his charge of negligence, that the partly demolished building, with its standing chimneys unguarded and uninclosed, and near a public street, was a place calculated to attract young children and likely to cause injury to children which the defendants were bound to anticipate ; and having stated that the defendants, on the other hand, contended that there was under the circumstances no duty on their part on May 3d to inclose the building or maintain a watchman, that the building stood on a private lot removed from the street, that the boy Alva was only a trespasser without invitation, and that if the premises were in a dangerous condition they were rendered so without the knowledge of the defendants by the acts of the boy Alva and his associates over which the defendants had no control and should in no way be made responsible, —thereupon charged the jury as follows : " If you find that said building and chimneys were left in a safe condition by the defendants and that the chimney causing the injuries was rendered dangerous and unsafe solely by the improper conduct of this boy Alva or his associates, which was the sole cause of its toppling over and falling, then, gentlemen, under such circumstances, you should find for the defendants, unless you further believe and find from the evidence that such conduct and action upon the part of the children could have been fairly and reasonably contemplated upon the part of the defendants."

We think there is error in this charge. Generally speaking, actionable negligence, as related to the circumstances of this case, implies (1) careless conduct in doing a lawful act, without actual intention of injuring another; (2) consequent damage to another, who, at the time and place, has the legal right to require of the actor the exercise of ordinary care in doing the lawful act. The essence of actionable negligence is the infringement of the legal right of another, or, in other words, the violation of a duty

imposed by law in respect to another. Upon the state of facts as claimed by the defendants, it is plain that they had the legal right to take down and remove the building standing on their land, to suspend the work of demolition during Sunday, to leave the chimney in question—then in a safe condition—uninclosed and unguarded, and without using any means of notification to the public of the patent condition of the building; and that in doing this they in fact exercised ordinary care, and neither infringed the legal rights of others nor violated any duty imposed upon them by law in respect to others. It is plain that the plaintiff's intestate at the time of receiving his injury had no legal right to be upon that part of the defendants' land, and being there had no right to interfere with the chimney there standing and to change it from a safe to a dangerous structure. But the claim is urged that when the defendants suspended their lawful work on Saturday night they might reasonably have anticipated that some person might on the following day unlawfully enter their land, undermine the chimney, and receive fatal injuries from its fall thus brought about; and that the law imposed upon the defendants the legal duty of using appropriate means for the prevention of such unlawful entry, and gave to the plaintiff's intestate the legal right to demand of the defendants the use of ordinary care for the purpose of preventing him from exposing himself to dangers created by his unlawful act. It may be true that these defendants in suspending on Saturday night the work of taking down the building on their land, situate as it was on the street of a populous city, could have fairly and reasonably contemplated that some heedless and thoughtless persons might on the following Sunday unlawfully enter upon their land, recklessly amuse themselves by digging away the supports of the chimney, left in a perfectly safe condition, and thus cause it to fall upon themselves. But whether this be true or not, it is not true that such persons had any legal right to require the defendants, under such circumstances, to surround their property with barriers, or to use other

means adequate to prevent their entry on the land. The law on this point is settled beyond controversy. The owner of land holds his property subject to certain legal rights of others, and their correlative duties; he cannot use it so as to endanger others entitled to the use of the adjoining highway or adjoining land, or of others whom he brings or invites to come upon his land, without using that care commensurate to the occasion. He may be liable to those unlawfully on his land who are hurt through concealed sources of danger prepared with the intention of injuring such persons. But the owner or tenant of land has the right of exclusive possession; whoever violates this right is a trespasser, and such trespasser assumes all risk of danger which is incident to the condition of the premises; as to him the owner does not owe the legal duty of exercising care in keeping his premises in a safe condition for his use, especially when the trespasser is wrongfully interfering with the condition of the property as left by the owner. A similar rule of reciprocal right and duty is applicable to one who enters upon the land of another as a mere licensee. *Pomponio* v. *New York, N. H. & H. R. Co.*, 66 Conn. 528, 537, 34 Atl. 491; *Rooney* v. *Woolworth*, 74 Conn. 720, 723, 52 Atl. 411; *Frost* v. *Eastern Railroad*, 64 N. H. 220, 221, 9 Atl. 790.

In the present case the land (as claimed by the defendants) was in a perfectly safe condition as respects all persons not intermeddling with its condition, and a trespasser by his own act rendered the safe condition unsafe, and in consequence suffered harm; and the claim is, that notwithstanding the defendants clearly owed no legal duty to such trespasser, they did owe a legal duty to children who might be tempted by the (to them) attractive condition of the land to do the same acts. In other words, that whenever the owner or possessor of land which, although in a perfectly safe condition, may yet be likely to tempt children to come upon it and there create a condition dangerous to themselves, the law imposes upon such owner or possessor the legal duty of protecting such children from exposing

themselves to such danger, and gives to such children the legal right to require of the owner or possessor the use of ordinary care and diligence in anticipating such conduct by children, and in the use of appropriate means for protecting them against themselves.

We think this claim has no solid foundation. "Temptation is not always invitation. As the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it, or hold property-owners bound to contemplate the infraction of property rights because the temptation to untrained minds to infringe them might have been foreseen." *Holbrook* v. *Aldrich*, 168 Mass. 15, 16, 46 N. E. 115. The legal duty of restraining children from going into unsafe places is imposed by law upon their parents and those who stand *in loco parentis*, and is not imposed upon strangers. The natural instinct to help the helpless would induce any one, in a position properly to do so, to restrain a child from exposing itself to danger; but to impose the duty of exercising such restraint as a legal duty upon all strangers, or upon a particular class of strangers such as the occupants of all tenements that might seem to the childish mind attractive, would prove impracticable and intolerable. The parental duty of restraint implies the parental power of correction, or of the use of preventive force.

It is true that in cases where the plaintiff seeks to recover damages alleged to have been caused by the negligence of the defendant, and it is claimed that the fault of the plaintiff concurred with that of the defendant in producing the injury, that the conduct required of the defendant may be affected by the helplessness of the plaintiff; what might be careful conduct in dealing with a vigorous person or an adult might well be careless conduct in dealing with an infirm person or a child, and conduct of the plaintiff which might establish his negligence or fault if he were a vigorous person or an adult might fail to establish such fault if he were infirm or a young child; and so it has been held in such cases that the youth of the plaintiff,

as indicating his helplessness and incapacity to commit a fault, may be considered in determining the question of his contributory negligence as well as that of the defendant's negligence.    *Wilmot* v. *McPadden*, 78 Conn. 276, 283, 61 Atl. 1069.    To this extent the instinct of humanity and the claims of the helpless are recognized as elements in determining what is ordinary care in cases where such care is imposed upon one as a legal duty; but these cases have no legitimate relation to the broad proposition that must be maintained to support the charge of the court as given, *viz :* the law attaches to the ownership or possession of land, which in its lawful and proper use may be in a condition attractive to children and dangerous to them, the legal duty in the owner or possessor of protecting children from yielding to the temptation to unlawfully enter his land and there heedlessly expose themselves to danger. The distinction between the latter and the former proposition may become difficult to draw in some of the infinite variety of cases where the claim of liability for negligence is made, but in its essence the distinction is clear and vital. In the former an injury occurs to one of two persons, each in the exercise of a legal right subject to the right of the other, and requiring of necessity reasonable care in each. Liability for the injury is incurred by the one in fault; if both are in fault there is no liability.    In the latter the injury occurs to one not in the exercise of a legal right, and the liability is placed upon one who in the exercise of his legal right has infringed no right of others.    It is the distinction between a liability arising from one's own fault, and a liability arising from another's misfortune; between the enforcement of a debt and the compulsion of a gift.

The theory of a liability in innocent landowners, for injuries directly resulting from the acts of children trespassing on their premises, finds support in a line of cases commonly called "the turntable cases" (*Sioux City & P. R. Co.* v. *Stout*, 17 Wall. (U. S.) 657; *Koons* v. *St. Louis & I. M. R. Co.*, 65 Mo. 592; *Kansas Central Ry. Co.* v. *Fitzsimmons*, 22 Kan. 686, 691; *Barrett* v. *Southern Pacific Co.*,

91 Cal. 296, 301, 27 Pac. 666; and others), and is vigorously rejected by courts in other jurisdictions. We have never had occasion to deal directly with this question; it was not involved in *Birge* v. *Gardiner*, 19 Conn. 507; any expressions that might favor the doctrine, in *Daley* v. *Norwich & W. R. Co.*, 26 Conn. 591, are modified and corrected in *Nolan* v. *New York, N. H. & H. R. Co.*, 53 Conn. 461, 474, 4 Atl. 106, and in *Rohloff* v. *Fair Haven & W. R. Co.*, 76 Conn. 689, 694, 58 Atl. 5; and in *Fitzmaurice* v. *Connecticut Ry. & Ltg. Co.*, 78 Conn. 406, 62 Atl. 620, we left the question an open one.

For the reasons above indicated we are satisfied that upon the facts assumed in the charge under discussion, the plaintiff's intestate, whether regarded as a mere licensee or a trespasser, assumed all risk of danger which was incident to the then condition of the premises, notwithstanding his age of seven and one half years. This view of the law is substantially maintained by the following cases. *Delaware, L. & W. R. Co.* v. *Reich*, 61 N. J. L. 635, 40 Atl. 682; *Frost* v. *Eastern Railroad*, 64 N. H. 220, 9 Atl. 790; *Daniels* v. *New York & N. E. R. Co.*, 154 Mass. 349, 28 N. E. 283; *Walsh* v. *Fitchburg R. Co.*, 145 N. Y. 301, 39 N. E. 1068.

The objection to the charge of the court in relation to the measure of damages is not well taken. The plaintiff, if entitled to recover at all, is entitled to recover damages on the same grounds, and measured by the same rule, as if the action had been brought by her intestate in his lifetime. *Wilmot* v. *McPadden*, 78 Conn. 276, 284, 69 Atl. 1069.

During the trial the plaintiff produced a witness who testified that on the Sunday in question, on his way to church, he walked on the side of the street next the defendants' premises and on his return from church walked on the opposite side of the street. Thereupon, and against the objection of the defendants, the court permitted the question, "Why did you do so?" The witness answered, "Because I was afraid that the chimney would fall upon me."

Crotty *v.* Danbury.

The matter was not pursued further. For the purpose of drawing from the witness his opinion, based upon observation, of the actual condition of the chimney, the form of the question was not correct, and unless asked for this purpose it was inadmissible; but the answer it elicited was immaterial. The unfounded, cautious timidity of this witness was not a fact relevant to the actual condition of the chimney. It is not necessarily error for a court to refuse to enforce formal rules for the questioning of witnesses; at times this course may be advisable, and such conduct of the court, involving no material harm to an objecting party, cannot be sufficient ground for a new trial, and ought not to be assigned as error.

There is error; the judgment of the Superior Court is set aside and the cause remanded for further proceedings according to law.

In this opinion the other judges concurred.